UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN RE:                          )     1:11-cv-192
                                )     1:11-cv-274
STEVE A. MCKENZIE               )     1:12-cv-025
                                )
Debtor                          )     Chief Judge Curtis L. Collier

## MEMORANDUM

Before the Court are appeals from two orders issued by the United States Bankruptcy Court

for the Eastern District of Tennessee (Rucker, J.). The appeals were consolidated because they arise

from common questions of law and fact.[1] The first order denied in part a motion for relief from the

automatic stay and abandonment of collateral filed by Appellant Grant, Konvalinka & Harrison, P.C.

("Appellant" or "GKH") (Case No. 1:11-cv-192, Court File No. 2-2 (the "May 27, 2011 Order")).

In ruling on Appellant's motion for relief, the bankruptcy court took under advisement several of

the issues raised by Appellant. The second order addressed those outstanding issues (Case No. 1:12-

cv-025, Court File No. 1-36 (the "December 9, 2011 Order")). The Appellees in this case are Steve

A. McKenzie, the debtor in the bankruptcy action ("Mr. McKenzie" or the "debtor"), and Trustee

C. Kenneth Still ("Trustee") ("Appellees"). The Court held oral arguments on April 18, 2012.

Attorneys for all of the relevant parties were present and argued their positions before the Court.

After giving careful consideration to the parties' arguments, the relevant case law, and the

---

[1] Case No. 1:12-cv-25 was consolidated with Case No. 1:11-cv-192 because the Court determined the issues raised in both appeals pertained to the bankruptcy court's decision on Appellant's motion for relief from the automatic stay. Case No. 1:11-cv-274, however, was opened in error. The parties' intent was to supplement the record by filing additional documents in Case No. 1:11-cv-192, but those documents were instead filed as a new case. On October 14, 2011, the Court issued an order clarifying that Case No. 1:11-cv-274 was not a new appeal. The Court consolidated the two cases so the documents in Case No. 1:11-cv-274 would be associated with Case No. 1:11-cv-192.

evidentiary record, the Court **AFFIRMS** the bankruptcy court's orders dated May 27, 2011 and

December 9, 2011, which are the subject of the appeals in Case Nos. 1:11-cv-192, 1:11-cv-274, and

1:12-cv-025. Because no further matters remain for adjudication, the Clerk of Court is directed to

**CLOSE** these cases.


## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

This case began as an involuntary Chapter 7 bankruptcy action filed against debtor Steve A.

McKenzie on November 11, 2008, in the United States Bankruptcy Court for the Eastern District

of Tennessee. The Chapter 7 bankruptcy was refiled as a voluntary Chapter 11 bankruptcy, and the

two cases were later consolidated. All of the events discussed below arise from this consolidated

bankruptcy matter.

On April 27, 2009, Appellant Grant, Konvalinka & Harrison, P.C. filed a proof of claim as

a secured creditor of Mr. McKenzie. On February 7, 2011, Mr. McKenzie filed an objection to

GKH's proof of claim because there were no attachments to the claim and because Mr. McKenzie

believed the amount was too great. On February 9, 2011, GKH amended its proof of claim and

attached documents showing a security interest in certain real estate and membership interests

owned by Mr. McKenzie. On March 7, 2011, GKH filed a "Motion for Relief from Stay and

Abandonment of Membership Interests and/or Stock Interests." The bankruptcy court set a hearing

for March 17, 2011, to take up Appellant's motion.

Trustee Kenneth C. Still filed a motion to continue the hearing, which the bankruptcy court

---

[2] The factual background comes from information in the documents and exhibits filed by the parties unless otherwise noted.

granted over GKH's objection. The bankruptcy court's order stated that the preliminary hearing required by statute would now be consolidated with the final hearing on GKH's motion for relief. The new hearing was set for May 4, 2011. On April 29, 2011, the bankruptcy court again entered an order continuing the final hearing until May 18, 2011. GKH's motion for relief was heard on May 18, 2011. On May 20, 2011, the bankruptcy court entered an order taking GKH's motion under advisement and, in light of "compelling circumstances," further extended the automatic stay and continued the hearing until May 24, 2011, the date on which the court stated it would deliver its opinion. On May 27, 2011, the final order was issued granting in part and denying in part GKH's motion for relief (the "May 27, 2011 Order"). The motion for relief was denied with respect to the debtor's membership interests in Cleveland Auto Mall, LLC, Spectrum Health Operations, LLC, and the "Exit 20" entities. The court also declared the automatic stay would remain in effect with respect to all of the pledged interests until further order of the court.

On June 10, 2011, GKH filed a precautionary motion for leave to appeal the bankruptcy court's May 27, 2011 Order. This Court granted GKH's motion for leave to appeal on January 12, 2012, taking into account the bankruptcy court's decision on December 9, 2011 (the "December 9, 2011 Order") that addressed several matters the court had previously taken under advisement in the May 27, 2011 Order. GKH seeks reversal of the bankruptcy court's orders denying in part GKH's motion for relief from the automatic stay and abandonment of collateral. GKH also requests that the automatic stay be terminated.

## II.    STANDARD OF REVIEW

The district court has appellate jurisdiction to hear appeals from final judgments and orders

of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The bankruptcy court's factual findings are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004). A finding of fact is considered clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

The denial of a motion for relief from the automatic stay is reviewed for an abuse of discretion because it is an equitable determination. *AmeriCredit Fin. Servs., Inc. v. Nichols (In re Nichols)*, 440 F.3d 850, 856 (6th Cir. 2006). A decision on the application of equitable tolling is reviewed *de novo* when the facts that underlie the equitable tolling are undisputed and is reviewed under the abuse of discretion standard when the facts are in dispute. *Chavez v. Carranza*, 559 F.3d 486, 493 (6th Cir. 2009) (citing *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007)).

## III. DISCUSSION

### A. Did the bankruptcy court improperly extend the automatic stay beyond the time allowed in 11 U.S.C. § 362(e)?

GKH's first argument on appeal is that the bankruptcy court improperly extended the automatic stay in contravention of 11 U.S.C. § 362(e). GKH claims the bankruptcy court failed to hold a preliminary hearing as required by 11 U.S.C. § 362(e)(1) and lacked sufficient grounds to extend the stay beyond the sixty-day time limit provided by 11 U.S.C. § 362(e)(2). The Trustee, however, disputes GKH's argument because he claims GKH is relying upon the wrong Code provision when discussing the preliminary hearing requirement. The Trustee also contends the bankruptcy court had good cause for extending the stay.

Title 11, Section 362 of the United States Code outlines the procedures a bankruptcy court

4

should follow when deciding whether to grant or deny relief from the automatic stay. Section 362(e)

reads as follows:

> (e)(1) Thirty days after a request . . . for relief from the stay . . ., such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued . . . pending the conclusion of the final hearing . . . if there is a reasonable likelihood that the party opposing relief from such stay will prevail . . . .
>
> (2) Notwithstanding paragraph (1), in a case under chapter 7, 11, or 13 in which the debtor is an individual, the stay under subsection (a) shall terminate on the date that is 60 days after a request is made by a party in interest under subsection (d), unless—
>
>> (A) a final decision is rendered by the court during the 60-day period beginning on the date of the request; or
>>
>> (B) such 60-day period is extended—
>>
>>> (I) by agreement of all parties in interest; or
>>>
>>> (ii) by the court for such specific period of time as the court finds required for good cause, as described in findings made by the court.

11 U.S.C. § 362(e).

As a preliminary matter, 11 U.S.C. § 362(e)(2) is the proper provision to apply based on the facts of the case. Mr. McKenzie is an individual and his case was filed as a consolidated Chapter 7 and Chapter 11 bankruptcy action. Because 11 U.S.C. § 362(e)(2) was the correct provision for the court to apply, GKH's arguments that the bankruptcy court failed to hold a preliminary hearing and make findings regarding the need to consolidate the preliminary and final hearings are without merit. Section 362(e)(2) imposes no such requirement on the court.

GKH's second argument is that, even under 11 U.S.C. § 362(e)(2), the bankruptcy court lacked good cause or compelling circumstances to extend the hearing date beyond the sixty-day time

period allowed by statute. On April 29, 2011, the court issued an order stating it would need to continue the hearing beyond the 60-day time limit until May 18, 2011, due to "compelling circumstances." The bankruptcy court provided a detailed explanation for why there was good cause to delay the proceeding. Among other reasons, the Trustee needed to resolve issues pertaining to the employment of counsel before the bankruptcy court proceeded to the merits of GKH's motion and held a hearing. Although GKH contends these issues should have been addressed in a more timely manner, the Trustee avers GKH played a role in the timing. According to the Trustee, these issues arose because he was forced to seek new counsel approximately two weeks before GKH's motion for relief was filed. The Trustee claims he had to do so because GKH sued his former counsel for malicious prosecution and abuse of process. As an aside, the Trustee notes that the actual delay in the proceedings only lasted approximately twelve days.

Based on the evidence in the record, the bankruptcy court had good cause to delay its final decision and extend the automatic stay. This decision was within the bankruptcy court's discretion, and the bankruptcy court properly made its decision in accordance with the requirements of § 362(e). The bankruptcy court also adequately explained its reasoning and showed there were compelling reasons the proceedings should be delayed. Thus, the bankruptcy court did not err when it extended the automatic stay.

**B.    Did the bankruptcy court err in concluding GKH had not satisfied its burden of proof under 11 U.S.C. § 362(d)(2)?**

GKH's second argument is that the bankruptcy court erred when it concluded GKH did not satisfy its burden of proof under 11 U.S.C. § 362(d)(2). A court can grant relief from the automatic stay under either § 362(d)(1) or (d)(2) if requested by a party in interest and after notice and a hearing. Section 362(d)(1) allows the court to grant relief "for cause, including the lack of adequate

6

protection of an interest in property of such party in interest." Section 362(d)(2), in contrast, provides that a court can grant relief from the stay with respect to property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." The party requesting relief under either provision has the burden of proof on "the issue of the debtor's equity in property"; the party opposing the requested relief carries the burden of proof on all other issues. 11 U.S.C. § 362(g). Equity is defined as "the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 392 (6th Cir.1986) (quoting *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir.1984)).

GKH contends it met its burden of proof as the party requesting relief and the bankruptcy court erred when it made GKH establish that the debtor, Mr. McKenzie, had the ability to transfer his membership interests to GKH. The parties entered into a stipulation with the bankruptcy court that stated the following: "to the extent the court determines GKH has a valid security interest in any property of the debtor, the parties stipulate that the debtor does not have any equity in such property." GKH claims the very language of this stipulation demonstrates that Mr. McKenzie lacked equity in the property at issue. Therefore, GKH argues its burden was immediately satisfied and the Trustee carried the burden of proof on all other issues. Absent any proof regarding the need for reorganization, GKH contends the stay should have been lifted.

GKH, however, has mischaracterized the nature of the parties' stipulation. The stipulation regarding equity only applied "to the extent the court determines GKH has a valid security interest in any property of the debtor." Thus, the real issue is who carried the burden of proof in showing there was a valid security interest in Mr. McKenzie's property. No courts in this circuit have

7

explicitly discussed who carries this burden of proof in the context of 11 U.S.C. §362(d)(2). The issue, however, has been addressed by bankruptcy courts in other jurisdictions. For example, in *In re Dahlquist*, 34 B.R. 476 (Bankr. D. S.D. 1983), the bankruptcy court had to determine whether the creditor bank was entitled to relief from the automatic stay. In discussing the relevant law, the court explained that, under either § 362(d)(1) or § 362(d)(2), "a creditor must establish the validity and perfection of its security interest and the amount of the debt and other allowable costs secured by its secured claim and must carry the ultimate burden of proof with respect to equity." *Id.* at 481. Many other courts have interpreted the law in a similar manner. *See In re Swift*, No. 07B 12787, 2009 WL 535986, at *3 (Bankr. N.D. Ill. Feb. 19, 2009) (noting the creditor has the burden of establishing "the existence, the validity, and the perfection of its secured claim against the real property"); *see also In re Borchers*, 45 B.R. 69, 71 (N.D. Iowa 1984); *United Companies Fin. Corp. v. Brantley*, 6 B.R. 178, 184 (Bankr. N.D. Fla. 1980). GKH cites one case that stands for a contrary proposition. In *In re Johnson*, 422 B.R. 183 (Bankr. E.D. Ark. 2010), the bankruptcy court placed the initial burden of proof on the Trustee to show that the creditor did not have a perfected security interest. *In re Johnson* stands as an anomaly, however, against the larger backdrop of cases that have placed this burden on the creditor, especially given that the court in *In re Johnson* failed to cite to any case law on this issue and offered no explanation for why it was applying this standard.

Also noteworthy is the fact that bankruptcy courts in this circuit have discussed the moving party's burden of proof with respect to motions for relief brought pursuant to § 362(d)(1). Although § 362(d)(1) only applies to requests for relief from the stay "for cause," the case law in this area is instructive for courts attempting to determine who carries the burden under § 362(d)(2). Under § 362(d)(1), the party seeking relief from the stay carries the burden of at least establishing a prima

8

facie case that it holds a valid security interest. *See In re Cambridge Woodbridge Apartments, LLC*, 292 B.R. 832 (Bankr. N.D. Ohio 2003). In *In re Cambridge Woodbridge Apartments, LLC*, the moving party could establish its prima facie case by showing "(1) a demonstration of a debt owing from the debtor to [the creditor]; (2) a valid security interest possessed by [the creditor] that secures the debt; and (3) a decline in the value of the collateral securing the debt combined with [the] debtor's failure to provide adequate protection of [the creditor's] interest." *Id.* at 841 (quoting *In re Howery*, 275 B.R. 852, 854 (Bankr. S.D. Ohio 2002)). The burden then shifts to the debtor to prove the creditor is adequately protected. *Id.* The allocation of the burdens of proof set out in § 362(g) applies to both § 362(d)(1) and (d)(2). Therefore, the discussion in *In re Cambridge Woodbridge Apartments, LLC*, regarding the moving party's burden under § 362(d)(1) shows that, implicit within the determination of the debtor's equity in the property, is the need to also determine whether the creditor possessed a valid security interest. The case also shows that the party with the burden of proof in establishing the debtor's equity in the property is also the party responsible for establishing that the creditor possessed a valid security interest.

Hence, the law in this circuit pertaining to § 362(d)(1) supports an interpretation of § 362(d)(2) requiring, at a minimum, the creditor must establish a prima facie case showing a valid security interest possessed by the creditor. Moreover, case law in other jurisdictions supports the even broader interpretation that the creditor bears the ultimate burden of proof on the issue of whether the debtor has equity in the property, and the issue of whether the creditor has a valid security interest is a necessary part of that analysis. Given that GKH failed to submit operating agreements for the entities as requested by the bankruptcy court, with the exception of Cleveland Auto Mall, LLC, and offered no other proof on the matter other than the stipulation, the Court

9

concludes the bankruptcy court did not err when it determined GKH failed to satisfy its burden of proof.

### C. Did the bankruptcy court err in concluding there was not a valid transfer of Mr. McKenzie's membership interest in Cleveland Auto Mall, LLC ("CAM")?

Next, GKH contends the bankruptcy court improperly denied GKH's motion for relief with respect to the membership interest in Cleveland Auto Mall, LLC ("CAM"). In the May 27, 2011 Order, the bankruptcy court concluded GKH's security interest did not attach in CAM because GKH did not carry its burden of showing (1) the debtor had rights in the pledged interest that would enable him to convey the entire interest without the consent of Mr. Nelson E. Bowers II, the other member of the limited liability company or (2) consent had actually been obtained. GKH, however, claims it established the existence of a valid transfer because it offered proof that Mr. Bowers had consented to the transfer in accordance with Tennessee law and the CAM operating agreement.

The Operating Agreement reads as follows:

(a) General Prohibition. Each member agrees that he or she will not sell, transfer, assign, give away, bequeath, grant a security interest in, encumber, pledge, or in any way alienate all or any portion of his, her or its Membership Interest, whether now or hereafter acquired, or any right or interest therein, whether voluntarily, by operation law, by gift, or otherwise, without the prior written consent of the Board, except for a transfer that meets the requirements of this agreement.

. . .

(b) Effect of Prohibited Transfer. Any transfer or acquisition of all or any portion of a Membership Interest in violation of Subsection (a) of this section shall be null and void and shall not operate to transfer any interest or title to the Membership Interest to the purported transferee. This restriction shall be effective against persons without actual knowledge of this restriction. The restrictions set forth in this article are deemed to be reasonable restrictions against the acquisition of a Membership Interest by persons whose interests may be inimical to that of the Company or other Members. Any transfer of a Membership Interest occurring as a result of the operation of law including without limitation, Section 48-218-101 of the Act shall not dissolve the Company, nor entitle or empower the transferee to become

10

a Member, to exercise any governance rights, or to receive any notices from the Company, except as expressly required by the Act and this agreement.

(Operating Agreement, Section 8.1(a),(b)).

Based on the evidence in the record, the Court agrees with the bankruptcy court's analysis and conclusions. First, GKH did not satisfy its burden in showing Mr. McKenzie had rights in the pledged interest that would enable him to convey the entire interest without Mr. Bowers' consent. As noted above, the language in the CAM Operating Agreement makes clear that an interest in CAM cannot be transferred without the prior written consent of the other members.

Moreover, the "Act" referenced in the agreement is understood to be the Tennessee Limited Liability Company Act, Tenn. Code Ann. §§ 48-201-101 *et seq.* (*See* Operating Agreement, Section 1.1). The Tennessee Limited Liability Company Act allows parties to impose restrictions on the transfer of a member's interests. In particular, § 48-218-102 requires consent from all members when assigning governance rights, unless the rights are being transferred to another member or the parties have stated differently in the operating agreement or articles. Section 48-218-101 allows parties to include restrictions on the assignment of financial rights in the operating agreement. Unless the restriction is "manifestly unreasonable," it can be enforced against the owner of the financial rights that are restricted.[3] *Id.* Therefore, under Tennessee corporate law, the restrictions imposed in the operating agreement are enforceable.

Second, there is insufficient evidence to establish prior consent was obtained to transfer Mr. McKenzie's rights in CAM. CAM only had two members: Mr McKenzie and Mr. Bowers. Mr. Bowers had an opportunity to testify at the hearing on GKH's motion for relief on May 24, 2011,

---

[3] GKH does not argue the restriction is "manifestly unreasonable." In fact, section 8.1(b) of the operating agreement even states the restrictions are "deemed to be reasonable."

and he claimed there was consent to the transfer that became effective "as of October 13 and October 24, 2008." He could not, however, recall when the consent was actually executed. As a result, the bankruptcy court could not find Bowers' undated written consent had been agreed to prior to the transfer of the security interest to CAM or even prior to the filing of this bankruptcy action.

In support of its decision, the bankruptcy court cited two cases that--while not having identical facts to this one--are still relevant. The Court agrees with the bankruptcy court's analysis. *In In re Weiss*, 376 B.R. 867 (Bankr. N.D. Ill. 2007), creditors sought relief from the automatic stay so they could foreclose on the Chapter 11 debtor's interests in certain partnerships and limited liability companies. The creditors argued the debtor had assigned his interests as collateral in the pledge agreement. However, the operating and partnership agreements governing the companies restricted the transfer of interests without the express written consent of the other members, partners, and interest holders. At issue was whether the creditors held perfected security interests in the debtor's interests based on the pledge agreement. The bankruptcy court ultimately decided the debtor's assignment of his interest under the pledge agreement was invalid. Although the court's analysis in *In re Weiss* was based on Illinois law, it is still relevant to the circumstances of this case because, like Illinois law, Tennessee law allows parties to restrict the transfer of membership interests for certain types of companies. *See also Condo v. Connors*, 2010 WL 2105926 (Colo. Ct. App. 2010), *cert. granted*, 2011 WL 882684 (Colo. Sup. Ct. Mar. 14, 2011) (determining the assignment of interest in the case violated the limited liability company operating agreement, which restricted the assignment of membership interests). Notably, although GKH argues the above cases are distinguishable, GKH fails to offer any case law in support of its own position.

Finally, GKH raises several alternative arguments for why the bankruptcy court erred. For

example, GKH contends that, even if Bowers did not give prior consent (an argument it does not concede), Bowers' subsequent waiver was sufficient. GKH also contends Mr. Bowers did not consider it a breach of the operating agreement that Mr. McKenzie assigned his membership interest in entities where McKenzie and Bowers were the only members. Although Mr. Bowers may have later expressed these views, the Court is still bound by the terms of the operating agreement and the relevant statutes in determining whether Mr. McKenzie's security interest can be assigned. GKH also attempts to shift the burden to the Trustee pursuant to 11 U.S.C. § 362(g) to show that the untimely consent of Mr. Bowers was invalid and the Trustee failed to introduce evidence on this issue. However, as noted in the previous section, GKH had the burden of proof of establishing it had a valid security interest in CAM. Implicit in this burden is the need to also show Mr. McKenzie had the necessary consent to transfer his membership interests to GKH.

Accordingly, because GKH did not demonstrate there was a valid transfer of Mr. McKenzie's membership interest in CAM under the relevant corporate law, the bankruptcy court did not err in reaching its decision.[4]

### D. Did the bankruptcy court err in deciding the Trustee could defensively use his status and powers of avoidance even though the statute of limitations had run?

GKH's fourth argument is that the bankruptcy court improperly allowed the Trustee to use his status and powers of avoidance defensively even though the statute of limitations had expired. Pursuant to 11 U.S.C. § 544(a) and (b), a trustee receives the status of a hypothetical lien creditor

---

[4] The bankruptcy court acknowledges GKH's interest has attached to the CAM member interest under § 47-9-408 despite GKH not showing that its assignment could overcome the applicable corporate restrictions. However, for the reasons discussed in the sections that follow, the Court still cannot grant the relief requested by GKH because, even if those interests were perfected, the trustee properly used his avoidance powers to defeat GKH's motion.

13

at the commencement of an action and can thereafter exercise his avoidance powers. However, the Bankruptcy Code imposes a timeframe within which the trustee may file an adversary action under § 544. As stated in 11 U.S.C. § 546(a):

> An action proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of–
> (1) the later of–
> (A) 2 years after the entry of the order for relief; or
> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). In light of § 546(a)(1), the Trustee had two years after the entry of the January 21, 2009 order for relief to assert a claim to invalidate, subordinate, or avoid GKH's security interest.

It is undisputed that the Trustee failed to assert a claim to invalidate, subordinate, or avoid GKH's security interest before the statute of limitations expired on January 21, 2011.

The Trustee, however, claims he was not bound by the statute of limitations provided in § 546(a)(1). Although the Trustee offers several reasons, on appeal, the Court will focus on the primary issue in contention--that is, whether the Trustee could use his right or power to "avoid" defensively under 11 U.S.C. § 544(a) without regard to the two year statute of limitations in order to oppose a motion for relief from the automatic stay. The bankruptcy court properly observed there is a split of authority on the issue. The majority view, which was adopted by the bankruptcy court and is referenced by the Trustee on appeal, is best represented by *In the Matter of Mid Atlantic Fund, Inc.*, 60 B.R. 604 (Bankr. S.D.N.Y. 1986).

In *Mid Atlantic Fund*, the creditors were assigned a purchase money note and mortgage as collateral security for the payment of a prior judgment against the debtor. A Chapter 7 petition was

14

filed against the debtor soon thereafter. The trustee informed the creditors their security interest was unperfected and stated he would, using his avoidance power, commence an adversary proceeding against them if they sought to enforce the security interest. The trustee did not commence an adversary proceeding within the applicable statute of limitations or the time extension agreed to by the parties per stipulation. After this period ended, the creditors demanded that the trustee make an accounting and turn over the monies he had received as payment for the note and mortgage. When he did not respond, the creditors filed a reclamation motion before the bankruptcy court, which the trustee opposed.

Although the bankruptcy court ultimately denied the creditors' reclamation motion, the court gave great consideration to the creditors' arguments, especially their contention that the trustee was barred from using his avoidance powers because the statute of limitations had expired. The court, however, observed the trustee had not brought an avoidance action but rather was acting defensively pursuant to § 502(d). The court explained "[t]he purpose of Code § 502(d) is to preclude entities which have received voidable transfers from sharing in the distribution of the assets of the estate unless and until the voidable transfer has been returned to the estate." *Id.* at 609. The court further noted that § 502(d) states the court "shall disallow" the claim at issue and imposes no time limit on when the trustee must object. *Id.* at 610. Among other things, the court notes that courts have commonly allowed the defensive use of barred claims outside the bankruptcy context. *Id.* The court also clarified that the trustee could not use his powers to seek additional recovery; instead he was limited to only "offsetting the claim asserted by the creditor." *Id.* at 611. The court finally noted that "[w]hen Code § 502(d) is used to disallow the claim of a secured creditor, the lien of the creditor becomes void." *Id.*

Since *Mid Atlantic Fund*, a number of courts have applied these principles in the context of various types of bankruptcy proceedings. *In re American Pie*, 361 B.R. 318 (Bankr. D. Mass. 2007) (citing *In re McLean Indus., Inc.*, 196 B.R. 670, 676 (S.D.N.Y. 2007)). *See In re KF Dairies, Inc.*, 143 B.R. 734, 736 (9th Cir. BAP 1992); *In re Stoecker*, 143 B.R. 118, 131 (Bankr. N.D. Ill. 1992), *aff'd*, 143 B.R. 879 (N.D. Ill. 1992); *In re Chase & Sanborn Corp.*, 124 B.R. 368, 370 (Bankr. S.D. Fla. 1991); *In re Minichello*, 120 B.R. 17, 19 (Bankr. M.D. Pa. 1990)); *see also In re America West Airlines, Inc.*, 217 F.3d 1161 (9th Cir. 2000); *In re Cushman Bakery*, 526 F.2d 23 (1st Cir. 1975), *cert denied*, 425 U.S. 937 (1976).

The minority view, which is supported by GKH, essentially states that a trustee cannot defensively use his avoidance powers once the statute of limitations has expired. A commonly cited case expressing this view is *In the Marketing Assocs. of America, Inc.*, 122 B.R. 367 (Bankr. E.D. Mo. 1991). In *Marketing Associates*, the trustee in a Chapter 11 bankruptcy objected to a creditor's proof of claim. The trustee alleged the creditor may have received certain preferential transfers. However, at no point, did he file an adversary proceeding to avoid the alleged preferential transfers. After the statute of limitations had expired for the trustee bringing an adversary proceeding pursuant to § 546(a)(1), the trustee sought to use § 502(d) to avoid the transfers. The court rejected the conclusions of the court in *Mid Atlantic*, noting that "it is implicit [in § 502(d)] that no preference is avoidable if the action is not brought within the time limits prescribed by § 526(a)(1). *Id.* at 369. The court also observed that allowing a trustee to proceed under § 502(d) after the statute of limitations had passed was a "procedural windfall." *Id.* Although the court agreed with the purpose of § 502(d) as explained by the court in *Mid Atlantic*, it nonetheless reached a different conclusion. The court determined the trustees in both *Mid Atlantic* and the case before it "failed to bring a timely

16

Section 547 preference complaint, and are forever barred from so doing." *Id.* at 370.

There are courts that have followed an approach similar to that espoused in *Marketing Associates* to ultimately decide a trustee cannot use his powers under § 502(d) defensively after the relevant time period has passed. *See, e.g., In re West*, 474 B.R. 191, 202-03 (Bankr. N.D. Miss. 2012); *In re IFS Fin. Corp.*, No. 02-39553, 2008 WL 4533713 (Bankr. S.D. Texas Oct. 2, 2008). *But see In re KF Dairies, Inc.*, 143 B.R. 734, 736-37 (B.A.P. 9th Cir. 1992) (stating *Marketing Associates*' "criticism of *Mid Atlantic* was misplaced" and that "[a]pplication of the time-bar to objections based on section 502(d) would undercut the statutory language, the purpose of the bankruptcy code, and the general rule that statutory time-bars are inapplicable to matters of defense, where no affirmative relief is sought"). After considering the relevant law, the Court concludes there is no reason to depart from the view applied in the majority of jurisdictions and by the bankruptcy court in this action. In using his avoidance powers pursuant to § 502(d), the Trustee sought to fulfill the purposes of this section of the Bankruptcy Code and achieve the most equal distribution possible under the circumstances. Although the instant case differs in some respects from *Mid Atlantic Fund* in that, among other things, the Trustee here did not file an objection to the creditor's motion for relief, those differences are minimal. Of particular significance is the fact that the Trustee was not attempting to seek additional recovery. Instead, he merely sought to use his status and avoidance powers defensively to prevent GKH from obtaining relief with respect to security interests believed to be preferential transfers. As noted in *Mid Atlantic Fund* and its progeny, a trustee, when acting defensively pursuant to § 502(d), can use his avoidance powers even after the statute of limitations has expired. Accordingly, the Court concludes the bankruptcy court did not err when it decided likewise.

17

**E. Did the bankruptcy court err when it equitably tolled the statute of limitations?**

As its final argument, GKH contends the bankruptcy court erred in concluding that the statute of limitations in § 546(a) should be equitably tolled. The Trustee had originally argued the statute of limitations should be equitably tolled as an alternative to his argument that he should be able to use his status and avoidance powers defensively to defeat GKH's claim.

"Strictly defined, equitable tolling is [t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Newton v. Wells Fargo Fin., Inc. (In re Dill)*, No. 07-3125, 2008 WL 2357237, at *3 (Bankr. E.D. Tenn. 2008) (quoting *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 422 (6th Cir. 2007)). When determining whether to apply the equitable tolling doctrine, courts often consider the following factors: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Id.* (citing *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 344 (6th Cir. 2003)). However, even after taking these factors into account, the decision to equitably toll the statute of limitations should be made on a case-by-case basis. *Id.* (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)); *see Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citation omitted).

Courts can consider any number of other factors when deciding whether the statute of limitations should be equitably tolled. *See, e.g., Vana v. Mallinckrodt Med., Inc.*, 70 F.3d 116 (6th Cir. 1995) (noting the Sixth Circuit had found the equitable tolling doctrine applicable where an employer's affirmative representations had caused the plaintiff to delay filing a claim and that the

18

rationale behind the doctrine was to ensure "that a defendant [not be] permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time"). However, as a general rule, the equitable tolling doctrine should be applied sparingly. *Cook*, 295 F.3d at 521.

The bankruptcy court acknowledged in the December 9, 2011 Order that it probably would not have tolled the statute of limitations if the decision had been based solely upon the five-factor test discussed in *In re Dill*. Among other things, the bankruptcy court noted that the Trustee is extremely experienced in these matters and that he could not legitimately feign ignorance of the notice and filing requirements. The Trustee also could have exercised greater diligence. For example, the court notes counsel for the Trustee, Mr. Leroy, mistakenly believed GKH's only collateral was real estate. This was true despite schedules indicating Mr. McKenzie owned a number of interests and ran a variety of businesses. The court also noted the Trustee failed to act upon the "London email." The London email was sent from the debtor's executive assistant at SAM Management Company, LLC to Jack London, a member of the Trustee's accounting firm. The email included several attachments relevant to the matters at hand, and the bankruptcy court acknowledges Mr. Leroy failed to give them sufficient consideration or act upon them.[5] Therefore, contrary to GKH's arguments at the hearing before this Court, the bankruptcy court did consider the Trustee's actions in deciding whether equitable tolling was appropriate. However, after reflecting upon these matters, the bankruptcy court ultimately concluded equitable tolling was appropriate because it found GKH had made affirmative misrepresentations in the record.

---

[5] At the hearing before this Court, GKH offered other examples where the Trustee allegedly failed to exercise due diligence.

Although the parties vigorously dispute the facts at issue, the bankruptcy court did not abuse its discretion in deciding to equitably toll the statute of limitations. The bankruptcy court carefully detailed in the December 9, 2011 Order several reasons that equitable tolling was appropriate in spite of the Trustee's lack of diligence. In particular, based on the court's findings of fact, the bankruptcy court received testimony from Kyle Weems, the attorney who filed the Chapter 11 action on behalf of Mr. McKenzie, that the transfer of the pledged interests from Mr. McKenzie to GKH were not disclosed on the schedules. Moreover, GKH did not disclose its security interest in the pledged interests when it filed its proof of claim on April 27, 2009. According to the bankruptcy court, this information was not disclosed in the record until GKH filed an amended claim on February 9, 2011, which was approximately two weeks after the statute of limitations expired for the Trustee to filed an avoidance action. The court also notes that GKH did not file the amended claim until after the debtor filed an objection to the original claim.

The bankruptcy court offers several other examples in its opinion regarding how GKH's actions were misleading. For example, with respect to the sale of TIPCO, a corporation in which both Mr. McKenzie and Mr. Bowers had an interest, Mr. John Anderson, member and director of GKH, was involved in preparing the sale motion on behalf of Mr. Bowers. The sale motion, however, was signed alleging there were no other liens on the interests. In subsequent proceedings, the bankruptcy court notes that various parties associated with GKH testified in a manner that left the court with the impression GKH had no interest in the transaction.[6] The court questioned

---

[6] One illustration that stood out in the bankruptcy court's opinion was its discussion of the hearing on May 25, 2011, pertaining to the sale motion of TIPCO. The court notes that John Konvalinka made a limited appearance on behalf of Mr. Bowers. The Court notes:

"When asked about whether his firm owned any interest in the two entities, Mr. Konvalinka responded that he was not aware that it did. Exhibit 11, John Konvalinka

members of GKH at a hearing in October 2011, directly asking why GKH had not earlier asserted its liens. The general consensus among those testifying was that GKH was not required to make a disclosure of the security interest in those proceedings. While the bankruptcy court acknowledged that several of the proceedings or matters did not require GKH to make an affirmative disclosure, taken as a whole, GKH had "opportunities to correct the affirmative misrepresentations that had been made" but did not.

Although some facts are disputed, the Court cannot say it is "left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). The bankruptcy court has had a unique vantage point throughout the debtor's bankruptcy proceedings to engage with the parties, hear testimony, and observe the parties' conduct in a manner that this Court is not privy to except through written transcripts. As a result, the bankruptcy court's assessment of the parties' conduct is properly given deference, especially when the court avers a party--here, GKH--made affirmative misrepresentations or engaged in misleading behavior. Based on the bankruptcy court's findings of fact, the Court concludes the bankruptcy court acted in accordance with the law when it decided to equitably toll the statute of limitations. Moreover, the bankruptcy court identified circumstances warranting tolling in this case even though the Trustee was not without fault.

Accordingly, the bankruptcy court did not abuse its discretion when it equitably tolled the

---

Testimony, May 25, 2011, Hearing at 7. A determination of whether this response was misleading or merely careful depends on whether the listener focuses on the words *any interest* or the word *own*. However the response is interpreted, the testimony did not leave the court with the impression that GKH itself had any interest in the transaction before the court."

(Court File No. 1-35 at 52).

statute of limitations.

**IV.     CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's orders dated May

27, 2011 and  December 9, 2011, which are the subject of the appeals in Case Nos. 1:11-cv-192,

1:11-cv-274, and 1:12-cv-025.


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**